## N. Y. COMMON PLEAS.

In the Matter of the Accounting of SCHLANG, assignee of RAUTH & SON.

*Practice in assignment cases — Commissions, costs and allowances to be made to an assignee who has not violated any duty, but is removed because his domestic relations are such as to make it probable that his feelings might conflict with his duty.*

Where an assignee has violated no duty, but was removed because his domestic relations were such as to make it probable that his feelings might conflict with his duty, his commissions will be allowed.

The assignee's claim for rent, clerk hire and gas bills paid whilst the stock was selling at retail was properly disallowed. But it was proper to allow such expenses as were incurred in preparing the goods for sale at auction.

It is the duty of the assignee to defend the trust, and to preserve the assigned estate, and it is proper to allow him the amount payable to his counsel for services in a replevin suit.

Where difficult questions arise an assignee may lawfully employ counsel to advise him in relation to the administration of the estate, and charge the expenses to the trust fund.

If a trustee or assignee has good ground for retiring, the costs of the suit by which he seeks and obtains a discharge from his trusteeship will be paid out of the trust fund.

Matter of Schlang.   .   .

Where, as in this case, an assignee without any fault on his part, is called upon to vacate his office, he stands in the position of one who voluntarily and for good cause seeks to be relieved from his trusteeship. With respect to the expenses of his accounting, he should be treated like a trustee, who, for good reason, and of his own accord, asks leave to lay down his office.

The assignee should not be allowed a payment made of a gas bill which was contracted for by the assignors and was a claim against the assigned estate. Not being a preferred claim, only a *pro rata* portion should have been paid. He should on the final accounting of the substituted assignee be entitled to reclaim the amount which, on a *pro rata* payment to creditors of the non-preferred class would be coming to the gas company.

The costs to be allowed on an accounting of an assignee are such costs as would be awarded on the trial of an issue of fact in a civil action; that is to say, for proceedings after notice and before trial, and the usual trial fee.

*Special Term, December*, 1883.

Van Hoesen, *J.* — In the case of *Halsy* agt. *Van Amring* (6 *Paige*, 12) the chancellor did not deem it necessary to pass upon the question as to whether the court of chancery could disallow commissions where an executor or administrator had fraudulently mismanaged the estate, but he did decide that commissions could not be disallowed by a surrogate, who is an officer of limited powers, and who, to use the language of the chancellor, "takes no power "by implication." The duty of the surrogate is to obey the statute, which requires him to allow to executors and administrators specified commissions for their services. The allowance to an executor of his commissions is held to be not a matter of grace but of right, even though by his misconduct he should have subjected himself to liability for compound interest (*Rapelye* agt. *Hall*, 1 *Sandf. Ch.*, 406), or though he should have been guilty of gross negligence (*Meacham* agt. *Stearns*, 9 *Paige*, 405).

The powers of the court of common pleas are not limited as are those of the surrogate, for by section 25 of the assignment act it possesses, in all proceedings arising under that act, "the powers of a court of equity in reference to the trust and

any matters involved therein." These powers in many cases may be exercised, though a formal action corresponding to a suit in equity be not pending. But it is not necessary now to determine whether or not the court will or can withhold the commissions of an assignee who has violated his trust. In the case of *Marquand* (57 *How. Pr.*, 477) the assignee had in fact got in the whole of the assigned estate, and then had used the moneys in his hands for the purchase for his own benefit of claims against the estate. Of course I refused to allow him commissions upon moneys laid out by him in buying claims. A surrogate could properly have withheld commissions upon moneys expended under similar circumstances. The moneys were not paid out within the meaning of the law, they were misappropriated and used by the assignee for his private speculations. In this case, however, Schlang, the assignee, has violated no duty. He was removed, as appears by the decision of chief justice DALY, because his domestic relations were such as to make it probable that his feelings might conflict with his duty. The chief justice said that the removal should be made under the principle established by the *Burtnett case*, which was a case in which the assignee had been the attorney and confidential adviser of the assignor's wife, and employed by her to collect a claim which, if paid, would have absorbed a large part of the assigned estate. The validity of the claim was disputed by creditors, and though nothing inconsistent with honor and duty had been done by the assignee it was held to be better that the assignee should not be a person whose bias at least was in favor of the wife and against the other creditors (*In re Cohn*, 20 *Alb. L. J.*, 352).

It is insisted, however, by Mr. Severance, who represents some creditors, that as he made a number of charges against Schlang, and as a removal followed, we must assume that all the charges have been established as *res adjudicata*, notwithstanding the decision of the chief justice, which declared that the case presented was within the principle of the *Burt-*

*nett case.* No such inference can be drawn. The truth of Mr. Severance's charges has never been passed upon, and it would be the grossest injustice to assume that Schlang had been found guilty of fraud or misconduct, and to subject him to the punishment that might, perhaps, follow such an adjudication. The referee was right in allowing Schlang his commissions.

*Second.* The referee properly disallowed the assignee's claim for rent, clerk hire and gas bills paid whilst the stock was selling at retail. It was proper, however, to allow such expenses as were incurred in preparing the goods for sale at auction. Rule 20, court common pleas, requires that the sale shall be advertised for at least ten days, in one or more newspapers, and that the goods shall be sold in parcels, according to a printed catalogue. The arranging of the goods in parcels, and the preparation of the catalogue required time; and it would not be improper for the assignee to retain possession of the store, and to employ assistants, if the assorting and the cataloguing of the goods could be done better there than in an auction room.

*Third.* It was proper to allow the assignee the amount payable to his counsel for services in the replevin suits. It was the duty of the assignee to defend the trust, and to preserve the assigned estate from attack (*Noyes* agt. *Blakeman*, 6 *N. Y.*, 579, 584).

*Fourth.* Where difficult questions arise, an assignee may lawfully employ counsel to advise him in relation to the administration of the estate, and charge the expenses to the trust fund (*Jewett* agt. *Woodward*, 1 *Edw. Ch. R.*, 200; *Levy's Accounting*, 1 *Abb. N. C.*, 177; *Bishop on Insolvent Debts*, sec. 378). The exceptioner has not pointed out that in the $458.36 allowed to the assignee as payments to his counsel, any sums were included that were not properly chargeable against the estate.

*Fifth.* It is said that Schlang should not be allowed the fees paid to the referee on this accounting. If Schlang had

Matter of Schlang.

been removed for misconduct, or if he had capriciously refused longer to serve, the objection would be a good one. The rule is that if a trustee has good ground for retiring, the costs of the suit by which he seeks to obtain a discharge from his trusteeship will be paid out of the trust fund (*Adams on Equity, m. p.* 39, *citing Coventry* agt. *Coventry*, 1 *Keen*, 758; *Greenwood* agt. *Wakeford*, 1 *Beav.*, 581; *Forshaw* agt. *Higginson*, 20 *Beav.*, 486; *Gardner* agt. *Doones*, 22 *Beav.*, 395; *Carter* agt. *Seabright*, 26 *Beav.*, 376; *Hill on Trustees, m. p.* 189). In this case Schlang, without any fault on his part, was called on to vacate his office, and he stands, therefore, in the position of one who voluntarily, and for good cause, seeks to be relieved from his trusteeship. There was no impropriety in his accepting the assigneeship, nor has he since done anything that can be called misconduct. The delicacy of his position occasioned his removal. As was said by the court of appeals in the *Burtnett case*, the words "misconduct" and "incompetency," as used in the assignment act, have no technical meaning, and were intended to embrace every conceivable cause which a court of equity might deem adequate for the removal of a trustee. I repeat, that I think Mr. Schlang is, with respect to the expenses of his accounting, to be treated like a trustee who, for good reason and of his own accord, asks leave to lay down his office.

*Sixth.* It is next objected that Mr. Schlang should not be allowed the payment made of a gas bill for twenty dollars and fifty cents for the period beginning December 23, 1878, and ending January 23, 1879. This bill was, it appears, contracted by the assignors, and was a claim against the assigned estate. Not being a preferred claim, only a *pro rata* portion should have been paid. The gas company must share with the other creditors of the non-preferred class; and Mr. Schlang must account for and pay over to his successor the amount paid to the company. He will, on the final accounting of the substituted assignee, be entitled to reclaim the amount which, on

a *pro rata* payment to creditors of the non-preferred class, would be coming to the gas company.

*Seventh.* The exception to the allowance of $150, to the assignee as the fee of his attorney for drawing off the accounts, and attending at the accounting, should be sustained. The case of *Burtis* agt. *Dodge* (1 *Barb. Ch. R.*, 91), suggests the true rule. We have not construed section twenty-six of the assignment act as giving us the right to arbitrarily allow costs and counsel fees, limited only by the court's discretion (*See the Matter of Risley* agt. *Clifford E. Smith, assignee of Risley, C. P., special term, February*, 1880).

Though the accounting is not a special proceeding, and is not governed by chapter 270, Laws of 1854, and though we are not controlled by any statute fixing the amount of costs and counsel fees, there is so much force in the suggestions of the chancellor, in *Halsey* agt. *Van Amringe* (6 *Paige*, 17, 18, 19), that I am in favor of adopting his reasoning, and of holding that the costs to be allowed on an accounting are such costs as would be awarded on the trial of an issue of fact in a civil action ; that is to say, for proceedings after notice and before trial, and the usual trial fee. There must be either an unlimited discretion in awarding costs and counsel fees, or else a settled rate conformable to some fixed standard. The only standard known to me is the bill of costs established by the Code, and to that I think we must conform (*See* 55 *N. Y.*, 146).

The allowance of $150 should be reduced to fifteen dollars, for proceedings after notice and before trial ; for each party served with notice to appear before the referee, not exceeding ten, two dollars, and for each party so served in excess of ten in number, one dollar ; for trial of an issue of fact, thirty dollars ; if more than two days occupied, in addition, ten dollars.

If the words "reasonable counsel fees" can be construed to mean an extra allowance, I know of no basis upon which such an allowance could, in this case be computed.

The foregoing observations dispose of all the exceptions filed to the referee's report. The argument of the counsel for the exceptioners is, in some respects, broader than the exceptions, but the court cannot pass upon matters as to which no exceptions have been filed, and which one counsel chooses to argue without notice to his adversary.

With the modifications suggested in this opinion, the report of the referee will be confirmed.